**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Jamell Evans, *on behalf of himself and others similarly situated*,<br><br>                                      *Plaintiffs*,<br><br>             -against-<br><br>J. Kings Food Service Professionals, Inc. and John King,<br><br>                                        *Defendant*. | No.<br><br>**FLSA COLLECTIVE ACTION and RULE 23 CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Jamell Evans ("Evans") on behalf of himself and others similarly situated, bring this action for damages and other legal and equitable relief against defendants J. Kings Food Service Professionals, Inc. ("J. Kings Food Service") and John King, and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff alleges that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, et seq. ("FLSA"), that Defendants failed to pay Plaintiff and a proposed class of others similarly situated the required overtime pay of time and one-half for hours worked in excess of forty hours per week and failed to pay them minimum wages for all hours worked by engaging in a practice of time shaving. Plaintiffs and a proposed class are entitled to recover from Defendant: (1) unpaid overtime compensation; (2) minimum wage for all hours worked; (3) liquidated damages on those amounts; (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

2. Plaintiff further alleges that, pursuant to the New York Labor Law "NYLL," he and a proposed class of other similarly situated employees are entitled to recover from Defendants: (1) unpaid minimum wage and overtime compensation; (2) liquidated damages for untimely wage payments; (3) liquidated damages and civil penalties

pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act; and (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

3. In addition to seeking recovery for the Plaintiff and similarly situated employees, this lawsuit also seeks to recover compensatory and punitive damages for disability discrimination under the New York State Human Rights Laws ("NYSHRL") suffered by Plaintiff Jamell Evans as a result of Defendant's unlawful conduct.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and 28 U.S.C. §§ 1331 and 1337 and 1343 and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because the Defendant maintains a place of business in this district and the majority of the conduct making up the basis of the complaint took place in this district.

## PARTIES

6. Plaintiff Jamell Evans is an adult, over eighteen years old, and citizen of New York State residing in Suffolk County.

7. Plaintiff and the Proposed Class were, throughout their entire employment with Defendants, covered, non-exempt employees within the meaning of the FLSA and NYLL.

8. Plaintiff and a proposed class of other similarly situated J. Kings Food Service workers employed in the State of New York, were wrongfully deprived of overtime wages under the FLSA and minimum wages and  timely pay in violation of the NYLL.  They were

also deprived of complete and accurate wage notices and wage statements in violation of the NYLL.

9.  Defendant J. Kings Food Service operates a food distribution warehouse and a network of food trucks as well as other yet to be determined food service related businesses.

10. Defendant J. Kings Food Service Professionals, Inc. is a domestic business corporation with its service of process address and principal place of business located at 700 Furrows Road, Holtsville, New York.  J. Kings Food Service Professionals, Inc., with an address of 700 Furrows Rd., Holtsville, New York is the entity listed on Plaintiff's 2019 W2 form.

11. According to New York's Department of State's Division of Corporations records, J. Kings Food Service Professionals, Inc. was "merged out of existence" and became inactive as of April 6, 2021.

12. Upon information and belief, including publicly available business news articles, Defendant Sysco Corporation acquired Defendant J. Kings Food Service Professionals, Inc. in April 2019.

13. Upon information and belief, defendant John King is a resident of the State of New York, a principal of J. Kings and in charge of setting operational policy, including as it related to employee hiring, supervision, and payroll.

14. At all times hereinafter, Mr. King was the Chief Executive Officer of J. Kings.

15. At all times hereinafter mentioned Mr. King has been responsible for overseeing the day-to-day operations of J. Kings.

16. At all times hereinafter mentioned Mr. King was at the J. Kings premises daily.

17. Upon information and belief, at all times hereinafter mentioned Mr. King made all decisions regarding Plaintiff's compensation.

18. Upon information and belief, at all times hereinafter mentioned Mr. King personally met with management personnel on a daily basis regarding business operations.

19. Upon information and belief, at all times hereinafter mentioned Mr. King personally met with management personnel on a regular basis regarding employee scheduling and discipline.

20. At all times hereinafter mentioned Mr. King personally handled customer service and client development for J. Kings.

21. At all times hereinafter mentioned Mr. King has interacted with the media and public as a representative of J. Kings for all J. Kings publicity, and charitable interaction.

22. J. Kings Food Service is considered a large employer, having at least 11 or more employees during the duration of Plaintiff's employment.

23. Defendants each maintained control, oversight, and direction over Plaintiff in regards to timekeeping, payroll, and other employment practices, and functioned as an employer pursuant to the NYLL.

24. Defendants, by virtue of ownership, management, and control over the wages and work of Plaintiff, are each considered an employer under the FLSA and NYLL.

25. Defendants jointly own and operate a food distribution warehouse in Suffolk County, New York.

## STATEMENT OF FACTS

26. All of the below factual allegations are, upon information and belief, consistent among Plaintiffs and all members of the Class.

27. Facts pertaining to Plaintiff Evans are alleged to the best of his recollection and based on limited evidence they have retained from their employment. Plaintiff reserves the right to provide a more precise statement of wage and hour information after obtaining the

relevant records through discovery in this action, including the records required by 12 NYCRR § 146-2.1.

28. Plaintiff Evans began working for Defendants in or around June 2018 as a warehouse worker located at its food distribution warehouse located at 700 Furrows Road, Holtsville, New York 11742.

29. Evans continued to work for Defendants until he became injured on the job on or around August 26, 2019 and Defendants terminated his employment in or around December 2019 while Evans was still out on medical leave and receiving workers compensation payments.

30. Plaintiff Evans worked full time for Defendants, working an average of 40 hours per week, and often more than 40 hours per week.

31. Plaintiff Evans was an hourly employee.

32. He was non-exempt in that he performed manual labor tasks.

33. His primary tasks included using a pallet jack to move pallets throughout the facility and onto trunks; move items on and off pallets; shrink wrapping pallets; and performing general cleaning tasks.

34. At all relevant times, Defendants paid Plaintiff approximately $15 per hour.

35. At all times relevant during Plaintiff's employment, he routinely worked full time, typically five days per week, for around 40 hours per week.

36. Plaintiff's manual work in Defendants' food warehouse meets the definition of "manual worker" as per NYLL Section 190.

37. During his employment, well over twenty-five percent of Plaintiff's duties were as a matter of company policy, and as a matter of fact, physical tasks.

38. Despite regularly spending more than twenty-five percent of his shift performing these

physical tasks, Plaintiff has been compensated by Defendants on a bi-weekly basis.

39. On a regular basis due to work volumes, Defendants asked Plaintiff Evans to stay late, up to two hours, after his regularly scheduled shift.

40. On multiple weeks when Plaintiff worked more than 40 hours in a given week, Defendants failed to pay Plaintiff Evans the required overtime rate of time and one-half for each hour worked in excess of 40 hours.

41. Instead, when reviewing his pay stubs, Plaintiff Evans observed that Defendants were only paying him an extra $3 or $4 for each hour worked in excess of 40 hours, rather than paying him the required 50% premium to his regular hourly rate each hour he worked in excess of 40 hours.

42. Plaintiff Evans also observed that Defendants had a practice of routinely rounding down his clock-in times. If he arrived early to work and clocked in and began working, Plaintiff Evans would lose any additional time he worked before the start of his scheduled shifts.

43. Plaintiff Evans also observed that if he clocked in a minute or two late, his start time would be rounded down to the nearest 7 or 15 minute interval.

44. The rounding down was always in favor of the employer and resulted in the employer depriving Plaintiff of payment for all hours worked at the correct rates.

45. During his employment, Plaintiff Evans would take notes and make other recordings of his clocking in and out throughout a given week to compare to his earned wages and credited hours on his pay stubs.

46. Based on Plaintiffs observations and records, Defendants routinely underpaid him as a result of their time-shaving.

47. When Plaintiff Evans raised his concerns about not receiving the proper overtime pay

and about not being compensated for all of the hours that he worked, Defendants managers attempted to avoid the questions and provided non-answers like "that's just how the time-clock works."

48. After raising these concerns to Defendants, rather than investigate and address their actual issues of non-compliance with state and federal wage and hour laws, Defendants told Plaintiff that if he wanted to make more money, he could work in their frozen food department where there was the opportunity to earn incentive pay for meeting or exceeding their performance standards by completing orders more quickly and efficiently than the average worker.

49. Defendants' practices of underpaying their warehouse workers at their 700 Furrows Road warehouse location in Holtsville were widely known among the workforce and there were frequent complaints and grumbling among the warehouse workers while Plaintiffs worked there.

50. Because of Defendants' improper compensation policies, Plaintiff was deprived of pay, in direct violation of the NYLL.

51. This pattern of conduct was continuous throughout Plaintiff's employment.

52. Defendants' unlawful conduct has been widespread, repeated, and consistent.

**Plaintiff Jamell Evans' Injury and Wrongful Termination**

53. Plaintiff Evans became injured on or around August 26, 2019 while working in Defendants' food warehouse.

54. Evans' leg was essentially run over by a coworker operating a motorized two-pallet jack, a piece of heavy equipment weighing approximately 2,000 pounds.

55. Plaintiff Evans sought medical attention, including X-rays and was diagnosed with crushing injuries and severe bruising to his leg  and excused from work as per his

doctor's orders until his injury was fully healed.

56.  Plaintiff Evans began receiving workers compensation from Travelers Insurance.

57.  As soon as possible after his injury and on a regular basis during his leave, Evans sent relevant medical records and doctors notes to Defendants.

58.  In or around December 2019, Defendants contacted Plaintiff and terminated his employment because he had been out too long and because they did not believe that he was severely injured, despite Evans sending them multiple medical records confirming his injury and his inability to work.

59.  Plaintiff's injury, incurred while working for Defendants, his receiving treatment for that injury, and his doctor ordered recovery from that injury constitutes a disability under New York State Human Rights Law.

60.  Defendants terminated Plaintiff Evans' employment in or around December 2019 in discriminatory fashion, solely on the basis of Plaintiff's disability and in retaliation for Plaintiff's request for the reasonable accommodation that he be allowed to continue his medical leave until his leg was healed.

**Actual and Acute Injuries as a Result of Defendants' Untimely Pay**

61.  Plaintiff and other similarly situated Manual Workers employed by Defendants suffered actual and acute injuries as a result of Defendants' failure to pay weekly wages.  The timely payment of earned wages were and are crucial to Plaintiffs' and the others' ability to pay day to day and monthly expenses, especially due to New York's area's high cost of living.  Defendants' conduct in paying wages late throughout this employment resulted in Plaintiff having to pay late for living expenses, incurring late fees, interests, negative credit ratings, and loss of use of property.

62.  For example, Plaintiff Evans' car insurance payments often fell on weeks during which

he wasn't paid by Defendants, resulting in him having to pay his car insurance late, resulting in late fees.  Plaintiff Evans also incurred overdraft charges from his bank on seven or more occasions during his employment as a result of Defendants' untimely pay.

63.   Defendants' late wage payments also deprived Plaintiff and other similarly situated Manual Workers of the time value of their earned money, resulting in tangible financial loss calculated as interest and in other amounts; and loss in the form of the negative impact on their ability to save, invest, and plan for the future.  Defendants reaped large profits from their customers as a direct result of its Manual Workers' labor, taking in hundreds of millions in revenue, while unlawfully withholding from and paying late its employees who are least able to weather these unjust delays.

## COLLECTIVE ACTION ALLEGATIONS

64.   Plaintiff brings this action individually and as class representative on behalf of the "Proposed FLSA Collective" defined as:

> All current and former hourly employees of Defendants employed as warehouse workers in New York State for the three-year period prior to the filing of the complaint.

65.   Upon information and belief, the total number of members of the proposed collective action class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than one hundred (1000) Collective Action Members who worked for the Defendants during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiff submits that this matter should be certified as a collective action under the FLSA, 29 U.S.C. § 216(b).

66.    Plaintiff will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the fields of employment law and class action litigation. Plaintiff has no interests that are contrary to or in conflict with those members of this collective action.

67.    This action should be certified as a collective action because the prosecution of separate actions by individual members of the class would create a risk of either inconsistent or varying adjudications with respect to individual members of the class, or adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect their interests.

68.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, in as much as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as a collective action.

69.    Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the common questions of law and fact common to Plaintiff and other Collective Action Members are:

        1. Whether the Defendants employed Plaintiff and the Collective Action Members within the meaning of the FLSA;

2. Whether the Defendants failed to keep true and accurate time and pay records for all hours worked by Plaintiff and the Collective Action Members;

3. What proof of hours worked is sufficient where the employer fails in its duty to maintain time records;

4. Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

5. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, liquidated and statutory damages, interest, attorneys' fees, and costs and disbursements; and

6. Whether the Defendants failed to pay Plaintiff and the Collective Action Members for hours worked in excess of 40 hours per workweek;

7. Whether Defendants' time-keeping and compensation practices resulted in a failure to pay Plaintiff and the Collective Action Members in full for all of their hours worked.

70. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

71. Plaintiff and others similarly situated have been substantially damaged by the Defendants' wrongful conduct.

## CLASS ACTION ALLEGATIONS

72. Plaintiff brings this action on behalf of themselves and all other similarly situated non-exempt hourly paid employees of Defendants in the State of New York at any time during the period commencing six years prior to the filing of this action and continuing until such further date as the practices complained of are discontinued (the "Class Period").

73. Plaintiff hereby states that the Class Period shall to the extent permitted by law be expanded to account for all claims made timely by virtue of Governor Cuomo's March 20, 2020 executive order, Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), and all subsequent and similar order, including but not limited to, Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55, 202.60, 202.67, and 202.72.

74. Defendants required Plaintiff and the proposed class to perform physical tasks throughout their workshifts, but failed to pay them weekly as required by the NYLL.

75. This action is properly maintainable as a class action pursuant to Article 9 of the New York Civil Practice Law and Rules. Plaintiff bring this action on his own behalf and as a class consisting of:

> All current and former J. Kings Foods Service Professionals, Inc. exempt employees, paid hourly in New York during the Class Period.

76. The Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is presently unknown to the Plaintiff, and calculation of such number would require facts in the sole control of Defendants, upon information and belief the size of the Class is believed to be in excess of 1000 individuals. In addition, the names of all potential members of the Class are not known.

77. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

78. There is no conflict between Plaintiff and any other member of the Class.

79. The questions of law and fact common to the Class predominate over any questions affecting only individual members. These questions of law and fact include, but are not limited to, the following:

  a.    Did the employee perform physical tasks more than 25% of the time?

     b.    At what frequency was the employee paid?

     c.    Whether the Defendants failed to pay Plaintiff and the Class for hours worked in excess of 40 hours per workweek;

     d.    Whether Defendants' time-keeping and compensation practices resulted in a failure to pay Plaintiffs and the Collective Action Members in full for all of their hours worked.

80. The claims of Plaintiff are typical to the claims of the Class because they are all current or former employees of Defendants who sustained damages, including underpayment of wages as a result of Defendants' common compensation policies and practices. The defenses that Defendants are likely to assert against the Plaintiffs' claims are typical of the defenses that Defendants are likely to assert against the Class.

81. Plaintiff and their counsel Mohammed Gangat, Esq. will fairly and adequately protect the interests of the Class.

82. Plaintiff has retained counsel experienced in complex wage and hour class action litigation.

83. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiffs and the Class members lack the financial resources to adequately prosecute separate lawsuits against Defendants. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to the Defendants' policies.

**STATEMENT OF CLAIMS**

**COUNT I: VIOLATIONS OF THE FLSA**

*Brought on behalf of Plaintiffs and the Proposed FLSA Collective*

84. Plaintiff realleges and re-avers each and every allegation and statement contained in paragraphs above of this Complaint as if fully set forth herein.

85. At all relevant times, upon information and belief, Defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and the Proposed FLSA Collective members are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

86. At all relevant times, Defendants employed Plaintiff and the Proposed FLSA Collective members within the meaning of the FLSA.

87. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

88. Plaintiff and the Proposed FLSA Collective members were entitled to be paid at the rate of time and one-half for all hours worked in excess of the maximum hours provided for in the FLSA. Defendants failed to pay Plaintiff and the Proposed FLSA Collective members overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

89. At all relevant times, Defendants had, and continue to have a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff and the Proposed FLSA Collective members for all hours worked in excess of forty (40) hours per work week, which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 207(a)(l) and 215(a).

90. At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and FLSA Collective Plaintiffs for all hours, including overtime, due to Defendants' policy of time shaving.

91. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and the Proposed FLSA Collective members at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when they knew or should have known such was due and that non-payment of minimum wage and overtime compensation would financially injure Plaintiff and the Proposed FLSA Collective.

92. Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.A. §§ 201, et seq., including 29 U.S.C. §§ 21 l(c) and 215(a).

93. Defendants failed to properly disclose or apprise Plaintiff and the Proposed FLSA Collective members of their rights under the FLSA.

94. As a direct and proximate result of Defendants' violation of the FLSA, Plaintiff and the Proposed FLSA Collective members are entitled to liquidated damages pursuant to the FLSA.

95. Due to the reckless, willful and unlawful acts of Defendants, Plaintiff and the Proposed FLSA Collective members suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, and prejudgment interest thereon.

96. Plaintiffs and the Proposed FLSA Collective members are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b)

## COUNT III: NYLL – Overtime Pay and Minimum Wage

### *Brought on behalf of Plaintiffs and the Proposed Rule 23 Class*

97.  Plaintiff realleges and re-avers each and every allegation and statement contained in
paragraphs above of this Complaint as if fully set forth herein.

98.  Defendants employed Plaintiff and the Rule 23 Proposed Class members within the
meaning of New York Labor Law §§ 2 and 651.

99.  Defendants knowingly and willfully violated the rights of Plaintiffs and the Rule 23
Proposed Class members by failing to pay Plaintiff and the Rule 23 Proposed Class
members the applicable required overtime compensation at the rate of time and one-half
for each hour worked in excess of forty (40) hours in a workweek.

100. Defendants also knowingly and willfully violated the rights of Plaintiffs and the Rule 23
Proposed Class members by failing to pay Plaintiffs and the Rule 23 Proposed Class
members for all hours worked through their time-shaving policy of time shaving.

101. Defendants failed to properly disclose or apprise Plaintiffs and the Rule 23 Proposed
Class members of their rights under the New York Labor Law.

102. Defendants failed to furnish Plaintiffs and the Rule 23 Proposed Class members with a
statement with every payment of wages listing gross wages, deductions and net wages, in
contravention of New York Labor Law § 195(3) and New York State Department of
Labor Regulations § 146-2.3.

103. Defendants failed to keep true and accurate records of hours worked by each employee
covered by an hourly minimum wage rate, the wages paid to all employees, and other
similar information in contravention of New York Labor Law § 661.

104. Defendants failed to establish, maintain, and preserve for not less than six (6) years
payroll records showing the hours worked, gross wages, deductions, and net wages for

each employee, in contravention of the New York Labor Law§ 194(4), and New York State Department of Labor Regulations.

105. At the time of their hiring, Defendants failed to notify Plaintiff and the Rule 23 Proposed Class members of their rates of pay and their regularly designated payday, in contravention of New York Labor Law § 195(1).

106. Due to the Defendants' New York Labor Law violations, Plaintiff and the Rule 23 Proposed Class members are entitled to recover from Defendants the difference between their actual wages and the amounts that were owed under the New York Labor law. The deficiency accounts for minimum wage for all straight time hours, overtime compensation for all overtime hours, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law§§ 663(1), 198.

107. Plaintiff and the Rule 23 Proposed Class members are also entitled to liquidated damages pursuant to New York Labor Law§ 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## COUNT III: NYLL Untimely Pay

### *Brought on Behalf of Plaintiffs and the Proposed Class*

<u>Frequency of Pay</u>

108. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs

109. The timely payment of compensation provisions NYCRR title 12 § 142-2.5(c)(1)(i) and its supporting regulations apply to Defendants and protect Plaintiff and the Proposed Class.

110. Defendants failed to pay Plaintiff and Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

111.  Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955).

112.  All of Defendants' warehouse and food service workers paid hourly are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

113.  As such, the failure to provide wages owed to Plaintiffs and all other similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at \*4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Associates. Contr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

114.  Due to Defendants' violations of the NYLL, Plaintiff and the New York Class are entitled to recover from Defendants compensatory damages in an amount to be determined in this action, plus the amount of the underpayments, plus reasonable attorneys' fees and costs, and pre-judgment and  post-judgment interest as provided for by NYLL § 198.

**COUNT V: Failure to Provide Wage Notice As Per NYLL 195(1)**

*Brought on Behalf of Plaintiffs and the Proposed Class*

115.  Defendants have willfully failed to supply Plaintiff with wage notices, as required by NYLL, Article 6, § 195(1), in English or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the

telephone number of the employer; plus such other information as the commissioner deems material and necessary.

116. Through their knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

117. Due to Defendants' willful violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars each daythat Defendants failed to provide Plaintiffs with wage notices, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-b ).

**COUNT VI: Failure to Provide Wage Statements as Per NYLL 193(3)**

*Brought on Behalf of Plaintiffs and the Proposed Class*

118. Defendants have willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

119. Through their knowing or intentional failure to provide Plaintiff with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 et seq., and the supporting New York State Department of Labor Regulations.

120. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed

to provide Plaintiff with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

### COUNT VII: Violation of the NYSHRL: Disability Discrimination

#### *Brought on Behalf of Plaintiff Jamell Evans*

121. Plaintiff Evan's workplace injury and his desire to follow his doctor's orders to remain on sick leave and avoid manual labor in order to recover from that injury, constitutes a "disability" as that term is defined under NYSHRL, § 292(21).

122. By the aforementioned actions in terminating Plaintiff's employment on the sole basis of his disability while he was recovering and receiving workers compensation, Defendants discriminated against Plaintiff, costing him the terms, conditions and privileges of his employment, on the basis of his disability in violation of NYSHRL § 296(1)(a).

123. As a result of the discrimination engaged in by Defendant, Plaintiff has suffered damages, including deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, pain and suffering, mental anguish, humiliation, and damage to reputation and career.

124. Under the NYSHRL, § 290, et seq. Plaintiff is entitled to economic damages, including but not limited to loss of past and future income, compensation, and benefits, including interest thereon, as compensatory damages for her physical suffering and emotional distress.

125. Defendants' discriminatory actions constituted willful violations of the NYSHRL, for which Plaintiff is entitled to punitive damages, pursuant to NYSHRL, § 297(9).

126. Plaintiff is also entitled to attorneys' fees pursuant to NYSHRL § 297(10), and costs of this action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the FLSA Collective and Rule 23 Class, demand judgment against Defendants as follows:

a.  That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants as hourly workers in New York State, and of their right to join this lawsuit if they belief they were denied proper wages;

b.  An award for unpaid overtime compensation due under the FLSA and New York Labor Law;

c.  An award of liquidated damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to 29 U.S.C. § 216;

d.  Certification as a class as described herein pursuant to CPLR Article 9 and appointing Plaintiff as representative of the Class and Plaintiff's counsel as lead counsel for the class;

e.  A jury trial on these issues to determine liability and damages;

f.  All damages which Plaintiff and the Class have sustained as a result of Defendants' conduct, including but not limited to unpaid and underpaid wages and other compensatory damages,

g.  Awarding Plaintiff and the Class their costs and disbursements incurred in connection with this action including reasonable attorneys' fees, and other costs, where such are permitted under CPLR 901;

h.  Pre-judgment and post-judgment interest, as provided by law;

i.   Compensatory and punitive damages to Plaintiff Evans under the NYSHRL; and

j.   Granting such other and further relief as this Court deems necessary and proper.

Dated:   New York, NY           ***Respectfully Submitted,***
         April 30, 2023

_____
Mohammed Gangat, Esq.
LAW OFFICE OF MOHAMMED GANGAT
675 Third Avenue, Suite 1810,
New York, NY 10017
718-669-0714
mgangat@gangatpllc.com